FILED
2013 Sep-27  AM 09:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **ROBERT MITCHELL JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 1:12-CV-1678-VEH** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **ACTING COMMISSIONER,** ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

---

## <u>MEMORANDUM OPINION</u>[1]

Plaintiff Robert Mitchell Johnson ("Mr. Johnson") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act.  He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits

---

[1]Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013.  *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on September 16, 2013).  Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB") and Supplemental Security Income ("SSI").[2] Mr. Johnson timely pursued and exhausted his administrative remedies available before the Commissioner.  The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Johnson was 54 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). *See* Tr. 77. He has passed a General Educational Development ("GED") test. Tr. 52. His past work experience includes employment as a long-haul truck driver. Tr. 178. He claims he became disabled on May 28, 2008, due to hyperthyroidism, an enlarged left rectus muscle, double vision, acid reflux, and several headaches. Tr. 177. His last period of work ended on that same date. *Id.*

On October 14, 2008, Mr. Johnson protectively filed a Title II application for a period of disability and DIB. Tr. 22. He also protectively filed a Title XVI application for SSI on that date. *Id.* On December 15, 2008, the Commissioner initially denied these claims. *Id.* Mr. Johnson timely filed a written request for a hearing on January 21, 2009. *Id.* The ALJ conducted a video hearing on the matter

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

on April 26, 2010. *Id.* On May 13, 2010, the ALJ issued his opinion concluding Mr. Johnson was not disabled and denying him benefits. Tr. 31. Mr. Johnson timely petitioned the Appeals Council to review the decision on June 1, 2010. Tr. 17. On February 24, 2012, the Appeals Council issued a denial of review on his claim. Tr. 1.

Mr. Johnson filed a Complaint with this court on April 24, 2012, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on August 31, 2012. Doc. 4. With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;
    (2)    whether the claimant has a severe impairment;
    (3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
    (4)    whether the claimant can perform his or her past work; and
    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

    Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy

in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.    Mr. Johnson met the insured status requirements of the Social Security Act through December 31, 2009.

2.    Mr. Johnson had not engaged in substantial gainful activity since May 28, 2008, the alleged disability onset date.

3.    Mr. Johnson had the following severe impairments: status post bilateral orbital decompression; thryoid eye disease; hypotropia of left eye; Graves' disease; and depression.

4.    Mr. Johnson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    Mr. Johnson had the residual functioning capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), with the following exceptions: he should avoid ladders, ropes, and scaffolds; avoid all activities that require depth perception; no commercial driving; avoid all exposure to hazardous machinery, unprotected heights, and uneven terrain; avoid work in areas where there is frequent movement from place to place of machinery, equipment, or personnel; moderate limitations in concentration, persistence and pace, and mild to moderate pain.

6.    Mr. Johnson was unable to perform any past relevant work.

7.    Mr. Johnson was born on February 25, 1956, and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8.    Mr. Johnson had at least a high school education and is able to

communicate in English.

9.    Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Mr. Johnson was "not disabled," whether or not he had transferable job skills.

10.    Considering Mr. Johnson's age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform.

11.    Mr. Johnson had not been under a disability, as defined in the Social Security Act, from May 28, 2008, through the date of this decision.

Tr. 24-31.

## ANALYSIS

## I.    Introduction

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence.  42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

---

[5]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Mr. Johnson urges this court to reverse the Commissioner's decision to deny him benefits on two grounds: (1) the ALJ's RFC determination was unsupported by substantial evidence, and (2) the ALJ erred in failing to develop the record. Doc. 6 at 6, 8. The court finds neither objection convincing.

## II.     Substantial evidence supports the ALJ's RFC finding.

Mr. Johnson challenges the ALJ's RFC finding on two grounds: (1) the ALJ's RFC determination did not reflect the grave physical limitations identified by his treating physician; and (2) the ALJ's mental RFC assessment was inadequately performed. *See* Doc. 6 at 6-7. The record does not support either complaint.

### A.     *The ALJ rightly discounted Dr. Reiland's opinion because the record and Mr. Johnson's own testimony undermined it.*

The ALJ concluded that Mr. Johnson had the RFC to perform "medium" work with certain defined environmental and psychological limitations. Tr. 27. This assessment conflicted with that of Dr. Debora S. Reiland, D.O., one of Mr. Johnson's treating physicians. On April 14, 2010, she filled out an "Physical Capacities Evaluation" form analyzing Mr. Johnson's condition. Tr. 444. The form revealed her following conclusions:

- •     Mr. Johnson could only lift ten pounds occasionally or less frequently.

8

- He could only sit one hour total during an eight-hour day.

- He could only stand and walk, in combination, two hours during such a day.

- He does not require an assistive device (excluding a prosthesis or leg brace) to ambulate even minimally in a normal workday.

- He could never perform the following activities: pushing and pulling movements; climbing and balancing, gross manipulation; fine manipulation; and bending, stooping, and reaching.

- He is also unable to: operate motor vehicles, work around hazardous machinery, and work around dust, allergens, fumes, etc.

*Id.* On that same date, she also filled out a "Clinical Assessment of Pain" form. Tr. 445-46. In that form, she suggested that Mr. Johnson's pain was sufficiently present "to be distracting to adequate performance of daily activities or work." Tr. 445. In response to a question about the effect of physical activity in this arena, she stated that such activity would "greatly increase[]" his pain "to such a degree as to cause distraction from tasks or total abandonment of tasks." *Id.* She also predicted that side effects from prescribed drug medication could "be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." Tr. 446. Finally, in a January 25, 2009, letter to Mr. Johnson's attorneys, Dr. Reiland opined that Mr. Johnson was "unable to work a full time 40 hour a week job any longer" because of his Graves' disease, related eye problems, and fatigue. Tr. 227. Mr. Johnson cites

these assessments to argue that "it would not have been unreasonable" to find that he

qualified only for sedentary work. Doc. 6 at 7.

A treating physician's opinion "must be given substantial or considerable

weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d

1232, 1240 (11th Cir. 2004) (quotation omitted). Good cause exists when:

- the treating physician's opinion was not bolstered by the evidence;

- the evidence supported a contrary finding; or

- the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.

*Id.* at 1240-41. The ALJ must clearly articulate the reasons for giving less weight to

a treating physician's opinion, and the failure to do so is reversible error. *Id.* at 1241.

Here, the ALJ gave Dr. Reiland's opinion "little" weight because it was "inconsistent

with the medical record as a whole and [Mr. Johnson's] own testimony." Tr. 29.

The ALJ emphasized that Mr. Johnson contradicted Dr. Reiland's assessment

in his own hearing testimony.  As the ALJ succinctly described it in his opinion:

> Dr. Reiland opined that the claimant could never do any of the postural or manipulative activities listed. The claimant testified that he has no problems with his legs or hands. Dr. Reiland opined that the claimant could only lift 10 pounds occasionally or less frequently. The claimant testified that he was capable of lifting 15 to 20 pounds. Dr. Reiland opined that drug side effects can be expected to be severe. The claimant testified he has no side effects from his medications.

10

*Id.* The hearing transcript largely corroborates this interpretation. *See* Tr. 58 (stating he could "comfortably" lift 15 to 20 pounds); Tr. 60 (answering negatively to the question of whether he was having any adverse side effects from his prescribed medication); Tr. 65 ("No, I ain't got no problems with my feet."). Such discrepancies indeed qualify as good cause for discrediting Dr. Reiland's evaluation of Mr. Johnson's capabilities.

Other parts of the record also undermine Dr. Reiland's dire assessment. Although Mr. Johnson obviously has serious vision problems – and complained of related headaches – he testified that his glasses help in this respect, even if they don't solve the problems entirely. *See* Tr. 53-54. His wife agreed with this judgment, suggesting that he had "kind of adjusted to" his double vision "as much as he can." Tr. 69. So did Dr. David G. Chandler, O.D., who examined Mr. Johnson in 2008 for his "primary open angle glaucoma." Tr. 323. In a November 14, 2008, letter, he stated that Mr. Johnson's vision was "correctable to 20/20 in both eyes" and that his glaucoma was "under control" at that time. *Id.* He further concluded that Mr. Johnson was "certainly . . . not visually disabled." *Id.* Finally, as the ALJ noted, there was no documentation substantiating the debilitating back pain of which Mr. Johnson complained. Tr. 28. Mr. Johnson has offered no evidence of diagnostic testing or physical therapy for such pain, nor did he present any of the usual modalities for such

11

a condition. *Id.*[6] Altogether, this evidence buffers the ALJ's decision to discredit Dr. Reiland's opinion on his physical limitations. It also qualifies as "such relevant evidence as a reasonable person would accept as adequate" to support the ALJ's physical RFC determination. *Bloodsworth*, 703 F.2d at 1239.

### B.     The ALJ adequately assessed Mr. Johnson's mental RFC.

Mr. Johnson testified that he had depression, and the ALJ agreed that this was one of his "severe" impairments. The ALJ accordingly used the required "special technique" dictated by the Psychiatric Review Technique Form ("PRTF") to evaluate Mr. Johnson's mental abilities and limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005). He then concluded that Mr. Johnson had "moderate" difficulties in concentration, persistence, and pace. Tr. 27. He incorporated this finding into his ultimate RFC determination. Mr. Johnson argues that this assessment was still deficient in two respects:

1.     It was "not specific enough to translate to quantifiable vocational restrictions or to meet the requirements of SSR 96-8p calling for a function by function analysis applying to the mental as well as physical demands of work;" and

--------

[6]Although Dr. Reiland's notes reveal that Mr. Johnson had evident tenderness in his back in his November 2009 visit with her, Tr. 437, her notes do not show that she prescribed any medication or treatment for this problem. Nor did she document any recommended limitations on his physical activity.

2.    It did "not address as required in an RFC analysis the basic mental work related demands of understanding, remembering, and carrying out instructions, and responding appropriate to supervision, coworkers, and work pressures in a work in a work setting pursuant to 20 C.F.R. 404.1545(c)."

Doc. 6 at 7.

SSR 96-8P reads, in relevant part, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . ." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, S.S.R. 96-8P (S.S.A. July 2, 1996). 20 C.F.R. § 1545(c) states the following:

When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

*Id.*

The court agrees with the Commissioner that Mr. Johnson's accusations are conclusory. *See* Doc. 7 at 13. He does not elaborate *at all* how the ALJ's PRTF findings conflict with these regulations, nor does he provide the court with citations to judicial or administrative decisions revealing similar violations in the past. And,

13

after independently perusing the language of these regulations, the court still finds no merit to Mr. Johnson's complaints. The PRTF mandates separate, scaled evaluations addressing how a given individual's mental impairment(s) affect his abilities in four functional areas: (1) activities of daily living, (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Moore*, 405 F.3d at 1213(quoting 20 C.F.R. § 416.920a(c)(3)). The ALJ must assign each of the first three areas one of five designations: none, mild, moderate, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). The ALJ must also rate the "episodes of decompensation" as either none; one or two; three; or four or more. *Id.* The ALJ here performed his analysis in the following manner:

> The claimant described his daily activities as fairly limited, yet he reported that he talks to family and friends that come to his house, talks on the phone, watches television, does dishes, takes out the garbage, feeds his dogs, and has no problem with personal care. He reported that his attention is affected by the way his eyes are doing at a given time and that he sometimes finishes what he starts . . . The claimant's wife testified that the medication he is taking for depression has helped some. He told Dr. Dreer he enjoyed spending time with his grandson and fishing . . . The undersigned finds that based on the claimant's testimony and the record as a whole, the claimant has mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration.

Tr. 26-27. The ALJ thus satisfied the PRTF requirements. Later in his opinion, he explained why he did not find Mr. Johnson's concentration, persistence, or pace as

14

limited as Dr. Dreer rated them in his January 8, 2010, examination of Mr. Johnson. Tr. 29. Mr. Johnson claimed that his concentration depended on how his eyes were doing at any given time, and the ALJ did not observe any problems with Mr. Johnson's concentration at the hearing. *Id.* The ALJ thus rated these functions as only moderately limited, rather than markedly so. *Id.*

The court considers this analysis sufficient under SSR 96-8p and 20 C.F.R. § 1545(c). Th ALJ identified the "functional limitations or restrictions" imposed on Mr. Johnson because of his depression, which he considered mild according to Mr. Johnson's own description of his daily activities and Dr. Dreer's observations in his records. The ALJ then assessed Mr. Johnson's "work-related abilities on a function-by-function basis" when he addressed the four functional areas described under the PRTF technique. 20 C.F.R. § 1545(c). He thus examined "the nature and extent of [Mr. Johnson's] mental limitations and restrictions" respecting how these incapacities affected Mr. Johnson's abilities to secure and maintain gainful employment. *Id.*[7] And,

---

[7]The ALJ did not specifically reference "the basic mental work related demands of understanding, remembering, and carrying out instructions, and responding appropriately to supervision, coworkers, and work pressures in a work setting." 20 C.F.R. § 1545(c). But, the court does not read the permissive language of 20 C.F.R. § 1545(c) as strictly requiring such. *See id.* ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, *may* reduce your ability to do past work and other work.") (emphasis added). Mr. Johnson does not cite any judicial or administrative decision mandating this specific reference, and the court is unable to find any in its own research. The ALJ indirectly addressed the cited considerations in his PRTF analysis, and the court believes

15

furthermore, he included his findings in his ultimate RFC determination and in the hypothetical question he posed to the vocational expert ("VE"). The ALJ thus satisfied his legal duties under the Regulations, and substantial evidence supports his conclusions.

## III.   The ALJ did not fail to develop the record.

Mr. Johnson also argues that the ALJ reversibly erred in failing to develop the record. According to Mr. Johnson, the ALJ failed in two respects: (1) he gave "good weight" to the opinion of the State Agency medical consultant who reviewed Mr. Johnson's record; and (2) he did not secure a consultative examination from a medical expert at the time of his decision. Doc. 6 at 8-10. Neither of these actions (or omissions), however, qualify as legal error.

### A.    The ALJ's Duty to Develop the Record

Social Security proceedings "are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (plurality). The ALJ thus has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111 (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). The ALJ's "basic obligation to develop a full and fair record," *Coward v. Schweiker*, 662 F.2d

---

this was adequate under the Regulations.

16

731, 735 (11th Cir. 1981), exists whether or not the applicant is represented. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted).  When the claimant is unrepresented, however, the ALJ's duty is heightened. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). As the Commissioner notes, Mr. Johnson was legally represented in his hearing below. Thus, the ALJ had no special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* (quotation omitted).

The ALJ must specifically "develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, and to make every reasonable effort to help a claimant get medical reports from the claimant's own medical sources when permission is given." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (unpublished) (citing 20 C.F.R. § 416.912(d)). The ALJ should recontact medical sources when the evidence received from that source is inadequate to determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) (citations omitted).

17

**B.     The ALJ permissibly credited Dr. Stephenson's assessment because he did not rely on it exclusively in developing the record.**

Mr. Johnson first argues that the ALJ failed his duty to develop the record fully and fairly when he gave "good weight" to an "outdated" opinion issued by Dr. Stuart Stephenson, M.D., a State Agency medical consultant who reviewed the case record. Doc. 6 at 8. According to Mr. Johnson, Dr. Stephenson's assessment, which occurred in December 2008, "did not take account of all the evidence." *Id.* It was also given at a time when Mr. Johnson "was still on steroid therapy and had not undergone his eye surgery which resulted in his candidacy for more eye surgery at the time of the ALJ decision." *Id.* There was thus "no contemporaneous and comprehensive RFC to take account of [Mr. Johnson's] impairments at the time of the adjudication." *Id.* Mr. Johnson further argues that this error contaminated the VE's testimony on which the ALJ relied. *Id.* at 8-9.

Mr. Johnson is unpersuasive on both fronts. Dr. Stephenson indeed performed his assessment roughly 17 months before the ALJ issued his decision. If the ALJ had relied only on Dr. Stephenson's opinion in deriving his conclusions, then he arguably would have failed to develop the record fully and fairly. But this was not the case here. As the Commissioner describes it aptly in his brief, the ALJ relied on three sources in arriving at his decision: (1) the medical record, (2) Mr. Johnson's

18

testimony, and (3) the medical opinion evidence. Doc. 7 at 6. This is evident from the systematic nature of his opinion. Rather than just crediting Dr. Stephenson's opinion, the ALJ considered evidence from several of Mr. Johnson's treating physicians, including those who had examined him periodically in the 12 months before Mr. Johnson filed his DIB and SSI applications. These included: Drs. Harrison, Newman, Long, Dreer, Reiland, and Chandler. In determining Mr. Johnson's RFC, he gave Dr. Dreer's opinion some weight, Dr. Reiland's little, Dr. Stephen's good, and Dr. Chandler's great. These facts completely undermine Mr. Johnson's implication that the ALJ relied only on Dr. Stephenson or that his analysis was otherwise reversibly incomplete. They instead show that the ALJ satisfied his duty to fully and fairly develop the record.

Nor did the ALJ err in his hypothetical to the VE. The ALJ "must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam). Otherwise, the testimony does not qualify as substantial evidence supporting the ALJ's findings. *Id.* at 1228. As with his RFC assertions, Mr. Johnson does not attempt to explain in his brief precisely how the ALJ's hypothetical was inadequate. He implies that its inadequacy derives from the underdeveloped record (and the invalid RFC that resulted from this). The court obviously disputes the premise – it doesn't find fault

with the record or the RFC. And, after reviewing the hearing transcript, the court finds nothing else faulty in the hypothetical questions posed to the VE.

In his examination of the VE, the ALJ first asked him to consider someone with Mr. Johnson's professional background. Tr. 72. Then – although this part of the transcript is spotty with various omissions – the ALJ, using record exhibits, evidently asked the VE to consider someone with Mr. Johnson's physical and mental RFC. Tr. 73. Finally, the ALJ added a hypothetical limitation reflecting Mr. Johnson's moderately impaired concentration abilities. *Id.* After considering these qualities, the VE delivered his assessment regarding Mr. Johnson's employment suitability. *Id.* at 73-74. This inquiry was adequately complete under the law in this Circuit. By clearly adding a limitation embodying his PRTF finding, the ALJ complied with the Eleventh Circuit's recent holding in *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1181 (11th Cir. 2011) (holding that the ALJ "should have explicitly included the [PRTF] limitation in his hypothetical question to the vocational expert").

### C.   *The ALJ did not need to obtain a consultative examination.*

Mr. Johnson next argues that the ALJ erred in failing to obtain a consultative examination by a medical expert. Doc. 6 at 9-10. Although he admits that there is no express requirement to secure such an opinion, he correctly notes that an ALJ should

do so "when one is needed to make an informed decision." Doc. 6 at 9 (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted)). Mr. Johnson claims that the ALJ needed a consultative examination here in order to make an informed and "dispositive" RFC finding. Doc. 6 at 10. Once again, however, this argument assumes (rather than proves) that the record was underdeveloped. The court has already reviewed the meticulous analysis performed by the ALJ in this case. Contrary to what Mr. Johnson suggests, the ALJ did not encounter a claimant with an unexamined (or inadequately examined) impairment. Rather, he confronted a "record contain[ing] sufficient evidence . . . to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted). Mr. Johnson notably did not petition the ALJ for a consultative examination, and the ALJ did not err in failing to obtain one unrequested by this represented claimant.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separate order.

**DONE** and **ORDERED** this the 27th day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge